finally breaking the hot weather cycle for a few days thank goodness. We will appreciate it if you follow our traffic light system when the yellow light comes on you have two more minutes and when the red light signals we appreciate you concluding your argument unless you're answering a question from the bench. We also appreciate record citations when you can make them because we may not have read the probably have not read the entire record before we come to oral argument but we are familiar with your briefs and record excerpts. First case of the morning is number 16 11292 United States v. Francisco Bernabe Gonzales. I think and I represent the appellant Francisco Bernabe Gonzales. We will be asking the court to remand this case with instructions to the district court to apply the guidelines in effect at resentencing. First off we believe that this remand was not a 3742 reversal the court rather was utilizing its authority under other provisions 28 USC 2106 and 1291. The government recognized as much below when it took the position that the 2016 guidelines should apply and asked the district court to apply them. Second and in the alternative the court if the court did reverse under section 3742 f1 then that was a mandate and the district court was required to follow the mandate but this court need not go down the government invites because it did not exercise its authority under 3742 but rather under the other provisions. So the default rule under 3553 A4 A2 is to use the guidelines in effect at resentencing and the district court should apply this rule. The court's remand order in this case came by way of an opposed motion for remand and the case it simply said the case is remanded for resentencing. It was a joint motion for remand wasn't it? No it was an opposed motion for remand and the government invited this court to remand if it wanted to resolve the Johnson issue at that point in time. It actually said if this court wants to remand for resentencing. So this court was essentially telling the district court to have a do-over without any finding of error. So it's indefensible to say when this court found no error that the district court was correct in refusing to apply the guidelines in effect at the date on the date of resentencing. The government recognized this below when it took the position that the 2016 guidelines should apply and asked the court to do that. The idea of the argument now that everything is a remand pursuant to 3742 F1 is simply inaccurate. If that were the case, why would 3742 G state that a district court shall sentence in the manner prescribed by F1 or F2 if there was nothing else? It would be completely superfluous if nothing other than F1 or F2 remands existed. So if it's not 3742 F1, then what is it? The court has the statutory power and authority under both 1291 and 2106. And 2106 specifically authorizes other kinds of remands requiring further findings that may be just. For instance, to ask a district court for more information about its holding or about its sentence or in light of possible clarifying amendments, which was the case here. So which would it have been here? I don't think there was any remand for further factual findings. It was not. But the practical, as a practical matter, this court does that. It does remand in cases where it needs further findings. I'm just saying that that there are other animals other than 3742 F1 and F2. And in this case there clearly was no finding of What was it then? It was either 2106 or 1291 or both of them. It doesn't really matter. The court had the power to do it. And when the court tells a district court to re-sentence a case, the district court uses the guidelines in effect on re-sentencing under 3553A. In fact, in Malia Martinez versus United States, which we cited in our 28J materials, the Supreme Court said courts have, for example, developed mechanisms short of a full remand to determine whether a district court, in fact, would have imposed a different sentence absent error. There are other situations where cases have been remanded under the Palladino case in the Sixth Circuit, Palladino Review. And in fact, this court has remanded for further findings in United States versus Bell, which we cited in our 28J materials. Keep your voice up, please. Thank you. You have a soft voice. So we believe that the district court should have applied those guidelines and obviously the guidelines in effect on the date of re-sentencing had done away with the career offender provision. And the effect would have been to lower Mr. Gonzalez's guideline range from 188 to 235 months down to 121 to 151 months. It's a significant swing. So if we remand again, if we reverse and remand, what's the court, the district court to do? We now have the Beckels decision. So what would happen on remand, on re-sentencing? Well, one of our points of error was that the district court in the first instance failed to consider the clarifying amendment. Amendment 798, which did away with the career offender provision in 4B 1.2, the Commission's own words indicate that it's clarifying. It did away with that provision because of confusion among the district courts in how to apply it. And so in this case, if you were to remand it again, I think it would be clear that you could tell the district court to remand and use the guidelines in effect on re-sentencing. Suppose in the meantime the Sentencing Commission were to impose, to redefine that guideline and make it more stringent, move it back the other way. The point here is, this is to put Mr. Gonzalez back in the place where he was after the first remand. I don't, well that's on the assumption that every time you get re-sentenced you get the benefit of whatever guidelines changes have occurred in the interim, and I'm really not sure that's the case. Well, I mean, if that's, I don't think, I see it the same way, Your Honor. Well, I know. Well, the way we, quote, see it doesn't matter. It's the law. That's why I said I'm not sure. So what is the law? Every time you, every time you get remanded for re-sentencing, does the court have to look at updated guidelines? Well, 3553A is pretty clear on that point, that if it's remanded for re-sentencing, absent error, then yes. Well, how do you, well, this was remanded for re-sentencing solely in light of Johnson, correct? The Supreme Court remanded to this court for further consideration in light of Johnson. Correct. And this court considered it. And your appellant's motion was you need to re-sentence in light of Johnson, right? Right, and at that point in time. So how can we construe the mandate as covering anything except the question whether the Johnson vagueness rationale applied to the career criminal guideline? Well, that's what we're arguing, Your Honor. We don't think that there was a mandate in the first instance, but if the court believes there was a mandate, what you were essentially telling the district court to do is, because this court considered the Johnson arguments on the motion for remand, and the government said, if you want to find that Johnson applies to the guidelines, remand to the district court. And this court did. So if there was a mandate, that was the mandate. Apply Johnson to the guidelines. The mandate rule. But they were opposing it, so what was your basis for remand? We also argued that Johnson applied to the guidelines. And at that point in time, Beckles didn't exist. It wasn't an intervening. I understand that very well, but all I'm saying is, I mean, you're making two separate arguments, right? One of them is on remand, the court had to use the updated, the 2003, whatever the newer version of the guidelines was, and also that the court was bound to find that what is now contrary to law, that the guidelines are vague. Well, we're making alternative arguments, Your Honor. I understand. And it has to be one or the other. Either it was remanded for error or not. If it was not error, then the court had to use the 2016 guidelines. If it was remanded under a mandate, then yes, this court was subsequently proven wrong. But at that point in time, you were telling the court, apply Johnson to the guidelines. And if this court wants to. We never held that Johnson should apply to the guidelines. We've never held that, right? Which is why we do not believe that it was remanded. So we couldn't have been holding that. However, we could have been saying, reconsider, you know, look at Johnson. We're not, this panel doesn't want to decide it. We're kicking it back to the district court. Well, in that circumstance, the posture of this case was the government said to this court, if you think Johnson should apply, remand it. And the court did. So at that point in time. So we would have had to write something about that. And the court did not. Well, all I'm saying, it is not unusual after the Supreme Court issues meaningful decision that we will issue a raft of remands to the district court to consider something. We did that in the 2016 cases. Just send them back to the district court and say, you take the first look at this. That is true, Your Honor. But so you're criticizing this court for trying to go through channels by remanding the district court? No, I'm not criticizing the court. I'm merely saying that as a first instance, we don't believe that it was remanded for error. And so the 2016 guidelines should have applied. And if not, there's another argument that we've made, which is the can be applied retroactively when they are clarifying. And 798 is clearly clarifying. The Sentencing Commission said it was changed because of the confusion among the district courts. And this court is aware of the litigation caused by Johnson. That was presented to the district court. We asked the district court to consider the amendments as clarifying, and it did not. There's a basic conflict in the district court's findings on remand. On the one hand, finding that there was no mandate from the court, but at the other time saying that it was bound by precedent. And you're right, Your Honor. At this time, at that point in time, this court had merely said that the issue was unresolved. The problem is, if this court were to remand now or to find that there was error, but it was harmless because of Beckles, as a practical matter, that would mean that you would be inviting district courts to substitute their judgment for your own. If you send the case back for reconsideration, and you're telling the district court to do something, and it decides, No, I'm going to re-review on the merits. I, the district court, will re-review on the merits and hope that I'll be right someday. That's the effect that it would have. It would allow the district court to take over this court's role. Well, I think, you know, just, I think it's, my own interpretation of what happened here was that after Johnson, various cases were kicked back to the district court. The district court, in this case, would have been perfectly correct to say, There is no governing precedent in the Fifth Circuit that says the guidelines are vague, and I'm not going to apply Johnson to this decision. I'm not going to. In which case, it comes up again, and by that time, Beckles is decided. Which, if you believe the district court's opinion was vindicated by Beckles, Mr. Gonzalez's position was vindicated by the change in guidelines, the clarifying amendments to the guidelines. Okay, I understand your argument. I will reserve the rest of my time if there are no other questions. Okay. Thank you. Thank you. Mr. McKay. Good morning. May it please the Court, Brian McKay on behalf of the United States. The Supreme Court's decision in Beckles gives us absolute certainty in that the district court properly calculated the guidelines range within which it sentenced Mr. Gonzalez the first time in 2014. And likewise, we know, because of Beckles, that the district court committed no guideline error the second time when it resentenced him two years later. And this certainty that Beckles provides illustrates that Mr. Gonzalez's appeal now is simply an error in the first instance. His primary argument that he should have been sentenced under an updated guidelines range at resentencing is premised on a fundamental misunderstanding of what 28 U.S.C. 2106 does. I would note that I think now he's relying also on Section 1291. I'm sorry, I'm not prepared to I was first raised in a 28-J file this past Sunday. I was out sick most of Monday and all of Tuesday. But if the Court wants, I can... I mean, unless that's, if that's 28 U.S.C. 1291, that just says appeals are from final judgments. Absolutely, Your Honor. But 2106 is what Mr. Gonzalez has relied on from the beginning. And it's not the catch-all provision that allows appellate courts to do whatever it may wish in any instance, in any order. Instead, in Green Law, cited in the reply, the United States Supreme Court explained that Section 2106 is a, it's a broad grant of authority to fashion certain remedies, but it doesn't displace procedural rules through which the appellate courts put into effect these remedies. For example, in Green Law, the Court held that, excuse me, it didn't displace the procedural rule by which it precluded appellate courts from granting relief to a non-appealing party. That is, an appellate court can't disregard the cross-appeal rule and then say 2106 authorized it to do so. In the same way, a court couldn't disregard the requirements for plain error and just say 2106 allows it to do that, or the Certificate of Appealability requirements of 28 U.S.C. 2255H and point to 2106 as authority. In the same way, Section 3754 provides three things that a Supreme, I'm sorry, that an appellate court can do when reviewing a sentence. It can find that there was, that the sentence was unlawful or based on an incorrect guideline range and it can find that it involved an erroneous guideline departure and remand for resentencing. And Subsection F3 provides that if it's neither of these two, then it shall affirm the sentence. Contrary to Mr. Gonzalez's view, Section 2106 didn't mean that this court reviewed, I'm sorry, sent it back down for resentencing without finding error and thus entitled him to an updated, to be sentenced under the updated guidelines. And I think as Judge Jones had pointed out, that too would violate any mandate. If the court's mandate was simply to reconsider the issue, reconsider the prior sentence in light of Johnson, this court's mandate would have been undermined. And in particular, the narrow mandate rule that this court adheres to, such as in Matthews, would be undermined if then, contrary to just considering that one issue, the district court then has to go back and recalculate the guidelines fresh under a new guideline version. The district court was told to resentence Mr. Gonzalez. Whether it had a mandate to take, to do so without the residual clause or not, Beckles shows us that the court, that the district court's decision was correct. And again, in committed in the calculation of the guidelines. And as Your Honor, Judge Prado pointed out, what next? Having had no error, there is no reason to send it back for the district court to do it again when there was no guideline error in the first place. Mr. Gonzalez also asked this court to reverse because, in his view, he does not believe that the district court considered the guideline amendments that had been put in place since the original sentencing. To the contrary, the record indicates that the judge did. In fact, he pointed out that there had been a two-level decrease in the drug quantities table and wanted to ensure that Mr. Gonzalez, once the appeals are final, Mr. Gonzalez has the ability to apply for adjustment of his sentence, presumably under 3582C. He can still do that, right? Yes. That was the position taken by both of the parties before the district court. And I believe that's correct, that he can do that once the appeals are final. Contrary to Mr. Gonzalez's argument, Amendment 798 is not clearly clarifying. This issue is submitted, I believe, on plain error review. There is different positions the courts have taken. United States v. WURIE, cited in Mr. Gonzalez's 28J letter, the court there, the First Circuit, did take the position that this is not a clarifying amendment. This was a clarifying amendment. Your brief doesn't even refer to that, right? Right. Right. Because what my brief refers to is because this is plain error, one, he can't show that the court didn't consider the amendments. In fact, he acknowledges they were discussed at great length at resentencing. Two, it's not clear that it was clarifying, and so this points out WURIE supports that. No, but what I'm saying is you didn't cite it, you didn't refer, of course, to WURIE. I'm not sure her brief does either. The brief doesn't refer to WURIE, but the 28J letter filed on Sunday does. Okay. All right. I'm behind. At the second prong of plain error, it's not clear that Amendment 798 is clarifying. Third, of course, had the court explicitly considered the amendments, and I believe that all the amendments were argued to the court, absolutely it considered them, but even if the court didn't explicitly discuss how it considered them, there's no indication that it would have arrived at a different sentence had it explicitly discussed how it considered those amendments. On the last issue that he raised about the post-sentencing rehabilitation, I want to point to record page 227, where at the resentencing, the following took place. We would ask the court to consider the post-offense rehabilitation under the 3553A factors. Okay. Do you have anything else you wish to say? No. So the record shows that the court actually did consider, and as I pointed out, it's contained in the PSR addendum. All of this was presented to the court. The court explained at resentencing that it had contemplated the sentence at the initial sentencing, determined that it was the appropriate sentence under the guidelines and 3553A factors. It reconsidered that at resentencing, having considered the Johnson and concluding that it did not change the guidelines. Why did the government, according to your brief, the government was sort of, was arguably agreeing that Johnson had been changed? Yes, Your Honor. After Johnson was decided, the department took the decision, made the decision nationwide, took the position that Johnson applied to the same language contained in 4B1.2. I didn't remember confronting those statements of that position from the government. Yes, Your Honor. The government took that position. The department took that position nationwide. In particular, in this circuit and also, I believe it was the 11th circuit and one other circuit, there were decisions that suggested, such as Pearson, suggesting that Johnson wouldn't apply to the guidelines. So we were in a position in at least two circuits where we adhered to the department's position that Johnson applied to the identical language in the guidelines. We did not want to mislead the court. We wanted the court to be aware of its prior authority of Pearson and more recently than Wilson, an unpublished decision, to alert the court to that. So then it would have been clearer, I suppose, if this court had just said, instead of remanding, just adhered to our then existing precedent, right? That would have certainly made it clearer below, but having not done that in this instance, I don't think changes it. The district court reached that correct conclusion, considered itself bound by Pearson, that if there was any implicit mandate in the remand order, that implicit mandate, as it was trying to discern what the mandate was, that implicit mandate seemed to be inconsistent with Pearson. And in the was pointing to Pearson and saying, in its conclusion, that Johnson couldn't apply to the guidelines. In retrospect, Beckles again tells us that there was no guideline error in the first instance or at re-sentencing. That's the third time you've said that. Yes, and that's my closing, Your Honor. There is no guideline error, and for that reason, there's no reason to in the first instance. So is there error, or is there harmless error? I believe that there is no error. Thank you. All right, thank you. Okay, Ms. Knight. Thank you, Your Honor. If there's no error, and there was no, the sentence was not imposed in violation of the guidelines, then it was not a 3742. No, what he's saying is the district court didn't err. Well, I think that goes back to our argument. If there was no error at the first instance, and let's not forget that this court affirmed the sentence in the first instance, then the court remanded under some other provision of its powers. And I'm sorry that the government is not prepared, but we did raise Section 1291 in our reply brief at Page 2. Well, I don't know what, now tell me again how 1291 makes any difference here. It's just the court's statutory authority to review all final orders, and there's case law that says sentences are final orders. As to the government's green law arguments, the government first invited this court to remand if it thought Johnson applied, and the court did. So if the government thought that that should not be the remand for the district court, it should have objected to this court's order, it could have, and it also could have avoided inviting the district court to use the 2016 guidelines below. The district court did not find a mandate. I think the district court's presumptive order issue below was pretty clear that it did not consider itself to be under a mandate. Let me ask you, have you analyzed this through to consider whether even if we ordered remand for resentencing with Beckles being the law and this alleged clarifying amendment perhaps applicable, would your client necessarily receive a lesser sentence? Yes, the guideline range is very different. I think it's a swing of 82 months from the high end of one guideline range to the high end of the guideline range. All right, but even if that were the case, we know some judges depart from the guidelines, and we've always been told that many judges on remand are just going to sentence somebody. Your man would be eligible for the same sentence, would he not? Well, the district court could have departed in the first instance because I think the statutory cap was too high. Right, but if we were to remand, I don't see anything that would happen. It's because of a focused error, and the court can only correct that error and then resentence within that scope. Well, I think if the court were to instruct the district court to apply the 2016 guidelines or the guidelines applicable on remand, then the district court would have to point to something that it did not point to in the first two instances to depart upward. So I don't know why that would be something that didn't exist before. With regard to the Beckles post hoc decision, the case raised by the government or cited by the government in its 28-J letter, Pinero notes that the intervening change of law exception to the mandate rule is when an intervening change of law occurs between the remand and the resentencing, not months after the resentencing, not at some later point in time. As to the clarifying nature of Amendment 798 here, the Sentencing Commission made it very clear that it was changing the amendment because of confusion by the district courts in how to apply it. It wouldn't be the first time that a clarifying amendment was confusing. I agree with you there, Your Honor. With regard to whether the district court considered Amendment 798, the government says that it was the district court considered the changes in the drug quantity calculations. That's a different guideline. That was Guideline 786, I believe. It did not give any It was raised several times below the issue of using the 2016 guidelines, so it was preserved. I can point you to record sites 221 to 223 at sentencing, 313, the government's request in its objections to the third addendum to the PSR, 326, and in the sealed sentencing memorandum that was submitted to the district court that was supplemented to the record on this appeal. And finally, even if the court were to review it under plain error, this court's, or Molina-Martinez, the court said in most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect higher guidelines range has demonstrated a reasonable probability of a different outcome, in which case he has that the error affects his substantial rights. Thank you, Your Honor. Okay, thank you very much. I do note that you're court-appointed.